41 465
45 1411

## No. 10,275.

## THE STATE OF LOUISIANA vs. THE PITTSBURG AND SOUTHERN COAL COMPANY.

The Supreme Court has appellate jurisdiction of a case in which the constitutionality of an impost is in contestation, irrespective of the amount involved.

Act 147 of 1888 is compulsory, and under its provisions, all coal boats sold in Louisiana must be gauged or inspected by the State gaugers appointed under the act.

The title of the act contains but one object. and the statute does not violate any provisions of the State Constitution.

A statute of a State requiring the inspection of a commodity so as to ascertain and secure a proper measurement is an inspection law within the meaning of the Constitution of the United States.

*Quantity* is as legitimate a subject of inspection as *quality.*

Act 147 of 1888 is not a regulation of commerce, nor does it lay an impost duty within the meaning of the Constitution of the United States.

The term impost. as used in that clause of the Constitution which says that " no State shall lay any imposts or duties on *imports* or *exports*." does not refer to articles imported from another State, but only to articles imported from foreign countries into the United States. 8 Wal. 123.

APPEAL from the First City Court of New Orleans.
Price, J.

Walter H. Rogers, Attorney General, and W. W. Vance. for Plaintiff and Intervenor, Appellants.

Bayne, Denègre & Bayne for Defendant and Appellee:

1. Where there are two defenses to a suit in a justice's court, one involving a question of fact, and a second a constitutional question, and the case goes off on the question of fact, no appeal lies to the Supreme Court.

2. A suit brought to recover a penalty imposed for non-observance of the State inspection laws (conceding for the present the question of inspection) does not involve the constitutionality or legality of any tax, toll or impost whatever, or of any fine, forfeiture or penalty imposed by a municipal corporation, and therefore no appeal lies in such a case from a city court to the Supreme Court. Barry, Inspector, vs. Garnier, 31 Ann. 831.

3. Act 147 of 1888. known as the "Coal Gauge Law," does not provide for compulsory gauging. It only requires gauging to be done by State gaugers when either buyer or seller requires it. The law is intended to confer a benefit, not levy a compulsory and odious tax, where neither purchaser nor seller requires or desires the services of a gauger.

4. If Act 147 of 1888 is intended to provide compulsory gauging of coal and coke boats it is unconstitutional—first, because it violates Article 46 of the Constitution, being a local or special law. regulating not only the trade in coal, but the trade in coal when sold in coal boats; second, because it violates article 1, section 8, paragraph 3 of the Constitution of the United States, being a regulation of interstate commerce. Henderson vs. Mayor, 92 U. S. 268; R. R. Co. vs. Husen, 95 U. S. 470; Bowman vs. R. R. Co., 125 U. S.

W. S. Benedict and H. C. Cage on the same side.

The opinion of the Court was delivered by

POCHÉ, J. This is a proceeding to enforce a penalty for the alleged violation of Act 147 of 1888, entitled, "An act for the appointment of two coal and coke boat gaugers, to fix their compensation, and to define their duties."

The charge is that the defendant corporation sold a boat of coal which had not been gauged as required by the statute, and the penalty is claimed under the eighth section of the act, which reads as follows:

"No boat load of coal or coke shall be sold in this city or State until it has been inspected as provided for in this act. And any person who shall sell a boat load of coal or coke that has not been gauged, as aforesaid, shall be liable to a penalty of fifty ($50) dollars for each boat or barge so sold, to be recovered, without costs of suit, in any court of competent jurisdiction, for the benefit of the Charity Hospital of New Orleans."

The defense is substantially:

1. A denial that the law has been violated; followed by an averment that the boat load of coal had been gauged in accordance with the provisions of the statute, to the satisfaction of the purchaser, by a competent gauger employed by the seller, and that the employment of the State gaugers is not made compulsory by the statute.

2. That, if the act can be construed as meaning that the employment of the State gaugers is compulsory, the legislation is violative of Articles 1, 6, 29 and 46 of the Constitution of the State of Louisiana, and of the first and second clauses of Section 10 of Article 1 of the Fifth Amendment; of Section 1 of the Fourteenth Amendment, and of the third clause of Section 8 of Article 1 of the Constitution of the United States.

The judgment below was in favor of the defendant and the State appeals.

The suggestion of appellee's counsel, that the case is not within our jurisdiction, is not well founded.

The main resistance to the act is that "it lays an impost or duty on goods, not the product of the State of Louisiana, but of a sister State, which is not necessary for the execution of any inspection law," and that as such it violates quite an array of articles of the Constitutions of Louisiana and of the United States.

The case, therefore, presents an issue involving the constitutionality or legality of an impost, within the meaning of Article 81 of the Constitution, which provides that in such cases the jurisdiction of this court attaches as well to the facts as to the law.

The authorities quoted on this point by appellee's counsel are decisions of cases originating under the Constitution of 1868, which differed in this particular from the present Constitution, and they are all answered by the decision of this court in the case of the Corporation of Minden vs. Silverstein et al., 36 Ann. 912. In that case the court found the law in favor of the corporation as affecting the legality of the fine, and decided the facts in favor of the defendants.

In taking jurisdiction of the facts, the court said: "The feature of the cause which grants to this court jurisdiction over the legal question involved, also vests it with jurisdiction over the facts. That element of jurisdiction, which was left in some doubt by the Constitution of 1868, has been materially elucidated by the provision on this subject in the present Constitution, which reads: ' In such cases the appeal on the law and the fact shall be directly from the court in which the case originated to the Supreme Court.'"

Hence it follows that we have, and that we must exercise, jurisdiction over this case, in both branches of the defense.

The judgment of the City Court is predicated on the conclusion that the employment of the State gaugers is not compulsory under the statute, and that, therefore, the law was not violated by the defendant corporation in having the coal measured by its own gauger, who had followed the requirements of the act as to the mode of measurement.

Our examination of the case has led us to a different conclusion.

The act is very inartistically worded, and appears to have been very carelessly and loosely drawn, hence it is not surprising to note the multifarious constructions to which it has already been subjected.

It consists of nine sections, which are substantially as follows:

1. The first section provides for the mode of appointment of two gaugers, and directs that their offices shall be kept in the City of New Orleans.

2. The second section regulates their bonds.

3. The third section makes it their duty, when called upon for that purpose, to gauge any coal or coke boat or barge in the port of New Orleans or the State of Louisiana.

4. The fourth section regulates the mode of gauging, and decides what a bushel shall consist of in measurement.

5. The fifth section makes it the duty of the gaugers, or either, to respond promptly to any call made for their or either of their services, and prescribes the style of certificates which they must furnish.

6. The sixth section fixes the fees for gauging and regauging, and requires the seller to pay the same.

7. The seventh section reads: " The purchaser of any boat or barge of coal or coke shall have the privilege of calling upon the said gauger or gaugers to regauge boats in all cases where the original gauge is not satisfactory, and such regauge shall be adopted as the correct measure. If the original gauge shall be found to be correct, then the purchaser shall pay the fee for regauging; but if the regauge shows a less measure, then the seller shall pay the fee."

8. The eighth section contains the penal clause of the act and has been transcribed in the first part of this opinion.

9. The ninth section fixes the term of office of the gaugers at four years, and provides that the act shall take effect from and after its passage.

From our construction of the act it appears that its true intent and purpose is to secure a uniform measurement of all boats or barges of coal or coke which are sold in this State, and to require that said

measurement is to be made by two State officers to be appointed for that purpose, whose certificates shall be proof that the required measurement has been made, as well as of the quantity of coal or coke contained in each boat or barge, and whose fees for such services are to be paid by the seller, except in cases of regauging, when the measure is found correct, in which cases the fees shall be paid by the purchaser.

Hence it is clear to our minds that the sale in the State of any boat load of coal or barge which has not been inspected and measured by the State gaugers is unlawful, and subjects the seller to the payment of a fine or penalty of fifty dollars for each boat or barge so sold.

The provisions of Section 3, which are held up as justifying the contention that the gauging by the State gaugers is optional with the seller, means, according to our construction, that the State gaugers shall be compelled to measure boats of coal, not only in the port of New Orleans, where their offices are situated, but that the measurement must be made, if required, in any other part of the State, and Section 5 requires that they must proceed to any point to which they are called, for the purpose of gauging coal boats, without unnecessary delay.

The requirements of these two sections may compel them to proceed for the purpose of measuring coal boats, to any point in this State, on the Mississippi river, from the Arkansas line to the Gulf, or to any point on any water course in the State on which a boat of coal can be floated.

But we are very clear in the conviction that neither these two sections nor any other provisions of the act can be reasonably construed as meaning that it is optional to dealers in coal in boats or barges to call or not, as they choose, on the State gaugers to measure their boats before they sell them.

Such a construction would absolutely and effectually defeat the primary object of the act as hereinabove indicated, and such a conclusion would obstruct, instead of executing, the legislative will solemnly expressed.

We, therefore, conclude, and we hold, that the employment of the State gaugers for the purpose of measuring every boat or barge of coal or coke sold in this State is compulsory, and that the defendant in this case is liable for the penalty inflicted for the infraction of the law, unless it be violative either of the State Constitution or of that of the United States.

We do not understand that on appeal the defendant's counsel lay any stress on the application of Articles 1, 6 and 29 of our Constitution to to the discussion of their case. But if they do, a sufficient answer is that the two articles first enumerated have no earthly connection with

the subject; and that Article 29, which requires that every law shall embrace but one object, and that shall be expressed in the title, is not violated by the statute under discussion.

The contention seems to be that the act embraces several objects. In thus arguing, counsel simply and unconsciously confound the *object* of a law with the *means* of carrying out that object.

The object of the law is the appointment of two coal and coke boat gaugers, which indicates the purpose or intention of having coal and coke gauged. Fxing the compension of the gaugers, and defining their duties are the means of carrying out the object of the law.

It is next contended that the act violates the paragraph of Article 46, which prohibits the General Assembly from passing any local or special law; "regulating labor, trade, manufacturing or agriculture."

But the law is neither local nor special, and is intended to take effect throughout the State on the subject-matter of its provisions. Whenever the Legislature proposes to create the inspectors of calico, thread or shoes, which counsel seem so seriously to dread, their case will doubtless receive proper judicial attention.

It is conceded, in argument, that there would be no complaint if the gauging fees were not exacted of the sellers of coal, and, therefore, this seems to be the *local* attack which it is desired to resist.

We, therefore, hold that the statute is not hostile to any provisions of the State Constitution.

The grounds of nullity charged against the statute as violative of the Constitution of the United States, which are pressed on appeal, are that it is a regulation of commerce, and as such antagonistic to paragraph 3 of Section 8 of Article 1 of the Constitution, which vests the Congress of the United States with the exclusive power "to regulate commerce with foreign nations, and among the several States and with the Indian tribes;" and in the next place that it purports to lay an impost or duty on coal, not produced in Louisiana, but in a sister State, which is not necessary for the execution of an inspection law, in violation of paragraph 2, Section 10 of Article 1 of the Federal Constitution, which forbids any State, "without the consent of Congress, to lay any imposts or duties on imports or exports, except what may be absolutely neces sary for executing its inspection laws."

The argument made on these two points is practically answered by the consideration, which flows from the very text of the statute, that it is clearly an inspection law, and that the State derives no profit or revenue from its enforcement, as the charges enacted for its execu-

tion enure exclusively to the gaugers or inspectors as their fees for the services rendered in the inspection.

It is not contended that those fees are excessive or unreasonable; on the contrary, it is in proof that the identical fee, $10, for inspecting or measuring a coal boat is the compensation allowed by the defendant to the gauger employed by itself for that very purpose.

The law is not a regulation of commerce in any sense of the word; it requires no condition on any one for the right of bringing coal for sale in Louisiana, either from a sister State or from a foreign country; and much less does it seek or tend to prohibit the introduction of that commodity into the State from any other part of the world. The inhabitants of other States and foreign countries may bring any quantity of coal for sale on our markets, and no power in the State can prevent it; all that the statute under discussion purports to do or aims to accomplish is to protect buyers and consumers of coal sold in boats and barges against fraud in weights and measurements. And it appears from the record, to our entire satisfaction, that the necessity for such an inspection was urgent.

It is in proof that the coal thus sold was bought in Pennsylvania, under one standard of measurement, and that it was sold in Louisiana under a different standard, and that the practical result was that what was sold here for 100 barrels of coal under the New Orleans standard of measurement, was, in truth, and represented but 96 barrels at Pittsburg and other coal shipping points in Pennsylvania.

Hence it is patent that the object of the law embraced a protection which the State owed to its citizens, and that the purpose could not be reached through any other channel but by responsible officers of the State, directly amenable to the laws of the land.

It is error to suppose that a law regulating the manner of measuring or weighing a commodity on the market is not an inspection law. It is well settled in jurisprudence that *quantity* is as legitimate a subject of inspection as *quality*.

And the right of enacting inspection laws by the States has never been questioned. "They form a portion of that immense mass of legislation which embraces anything within the territory of a State, not surrendered to a general government; all which can be most advantageously exercised by the States themselves." Gibbons vs. Ogden, 9 Wheaton, 203.

The views which we have herein announced, both as to the nature and scope of the statute, and as to the power of the State to enact and to enforce similar legislation, find sanction in numerous adjudications by many courts of the country, dealing with laws of the same import,

which had been assailed on constitutional grounds, substantially similar to those which have been invoked in the present discussion.

Our own reports furnish three cases presenting kindred issues, in which the same views prevailed. State vs. Fosdick, 21 Ann. 256; State vs. Pleasants, 23 Ann. 349; Clark vs. Board of Health, 30 Ann. 1351.

The first two of these cases involved the alleged unconstitutionality of hay inspection and weighing laws, and the other presented a similar resistance to a coal oil inspection and measuring law.

In each of those cases it was decided that the law was not a regulation of commerce, or an impost on imports.

As far back as the year 1823, the highest court of South Carolina disposed of a contestation involving the alleged unconstitutionality of an ordinance of the City of Charleston, requiring the measurement of coals by an inspector. It was there held that the ordinance was not a regulation of commerce, although the coal sought to be measured had been imported from a foreign land.

We quote from that learned opinion the following passage, on account of its peculiar bearing on one of the points now under discussion:

"If any articles imported can be inspected, I cannot undertake to decide that coals ought not. Quantity as well as quality is an object of inspection, and it may contribute as much to the convenience of the citizens of this place, where coals are used very generally for fuel, to have an inspection of them, as of beef, or pork, or bread or any other article." McCord's Reports, 2 vol., p. 495, Council vs. Rogers; see also Stokes vs. New York, 14 Wendell, 87; Yates vs. Milwaukee, 12 Wisconsin, 673.

In the leading case of Turner vs. State of Maryland, 107, United States Reports, p. 38, the question of State inspection laws, as affected by the Constitution of the United States, received an exhaustive review in an elaborate opinion containing very useful information on the subject.

In that case the noted Maryland tobacco laws were decided to be constitutional. It was then held:

"The charge for outage, under the proviso of said section 41, as so amended and re-enacted, is an inspection duty, within the meaning of the Constitution."

"Dispensing with an opening for inspection of the hogsheads, mentioned in said proviso, does not, in view of the other provisions of the tobacco inspection statutes of Maryland, deprive those statutes of the character of inspection laws."

In that case the court said: " Recognized elements of inspection laws

have always been quality of the article, form, capacity, dimensions and weight of package. * * * It has never been regarded as necessary, and it is manifestly not necessary that all of these elements should co-exist in order to make a valid inspection law."

All the foregoing considerations in this opinion are predicated on the theory that the coal, which is the primeval object of this contestation, is imported within the meaning of the Constitution. But such is not the case; it is in proof that it all comes from the State of Pennsylvania. Now the Supreme Court of the United States has decided that, "the term import, as used in that clause of the Constitution which says that no 'State shall lay any imposts or duties on *imports* or exports' does not refer to articles imported from another State, but only to articles imported from foreign countries into the United States." Woodruff vs. Parham, 8 Wallace 123.

It is quite clear that this view of the case is of itself fatal to defendant's contention on the question of imports.

A thorough examination of the questions discussed has led us to the conclusion that the State had the clear constitutional power to enact the statute in contestation, and hence it must be enforced.

It is, therefore, ordered that the judgment appealed from be annulled, avoided and reversed, and it is now ordered and decreed that the defendant be condemned to pay to the State of Louisiana for the benefit of the Charity Hospital of New Orleans, the sum of fifty dollars, with costs in both courts.

## ON APPLICATION FOR REHEARING.

FENNER, J. Nothing in this application shakes our conviction of the correctness of our interpretation of the statute as making the gauging of coal boats and barges, before sale, compulsory. We may remark, however, that the act applies exclusively to sales of *boat-loads* or *barge-loads* of coal, and not to sales of a particular number of barrels of coal from a boat or barge. Therefore, the suggestion of counsel of the hardship of having to pay $10 for the privilege of selling 10 barrels of coal from a boat, is irrelevant and without foundation.

The case of Turner vs. Maryland, 107 U. S. 38, is conclusive on the Federal questions involved, except in one respect, viz: in that case the inspection applied to tobacco grown in Maryland alone, and the court concluded its opinion by saying: "We must not be understood as expressing any opinion as to any provisions of the Maryland laws which refer to the inspection of tobacco grown out of Maryland." This and other clauses of the opinion reserve the question as to whether State

inspection laws of the character involved in that and in the present case, not essential to the immediate health or safety of the inhabitants, can be applied to articles brought from one State into another for sale.

Admitting there may be doubt on this question, we deem it safest to maintain the constitutionality of State law on the other authorities quoted by us, there being no decision of the Supreme Court of the United States to the contrary.

Rehearing refused.